## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MILDRED MUNOZ RIVERA, et al.,**
    **Plaintiffs**

      **v.**

**WALGREEN CO., d/b/a Walgreens Company "A", "B", and "C",**
    **Defendants**

**Civil No. 04-1766 (DRD)**

### MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Mildred Muñoz, her spouse, César Pérez, and their Conjugal Partnership filed a complaint on July 27, 2004, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (hereafter "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (hereafter "ADEA) and supplemental claims under Puerto Rico law (**Docket No. 1**). Both plaintiffs were employed by Walgreen Co.   Mildred Muñoz alleges discriminatory employment practices while employed by Walgreen Co. in the form of discrimination based upon disability, denial of requests for reasonable accommodation, age discrimination, unjust dismissal and retaliation. She and her spouse also seek relief under Puerto Rico tort law.

The Defendants move for summary judgment asserting that plaintiffs lack sufficient evidence to establish a *prima facie* case of age and disability discrimination.   Defendants further contend that to the extent such a *prima facie* can be made, the claims are barred by the doctrine of *res judicata* and further that Muñoz failed to exhaust her administrative remedies (**Docket No. 10**).  Plaintiffs oppose the motion (**Docket No. 12**).  The motion was referred for Report and Recommendation (**Docket Nos. 24, 25**).

## I.    Procedural and Factual Background

Muñoz submitted an affidavit in support of her opposition to the motion for summary judgment. It is well established that "when an interested witness has given clear answers to unambiguous questions, he cannot create conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony changed." *Ramos v. Román*, 83 F.Supp. 2d 233, 247 (D.P.R. 2000) (citations omitted). Accordingly, the undersigned finds that the portion of Muñoz's sworn statement that contradicts her deposition testimony is inadmissible. More so, and although such a statement can be used in place of sworn statements and affidavits to oppose summary judgment, *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir. 1993), it must contain more than "simple conclusory averments." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 793 n.1 (1st Cir. 1992); *see also Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000) ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient."). Accordingly, those conclusory statements contained in Muñoz's sworn statement are not considered.

Unless otherwise noted, the facts herein depicted are derived from the complaint and statement of facts submitted by the parties in the motion for summary judgment and opposition thereto (**Docket Nos.** 10). They are construed in the light most favorable to the non-moving party.

Mildred Muñoz (hereafter "Muñoz") was born on November 26, 1957. She began

working as a pharmacist at Walgreen Co. d/b/a Walgreens (hereafter "Walgreens") on August 3, 1981.  She was promoted to District Pharmacy Supervisor in 1991. Muñoz's husband, Cesar Pérez (hereafter "Pérez") was also employed by Walgreens.  In September, 1999; he was diagnosed with chronic lymphocytic leukemia, and remained off work, for treatment of his illness for nine months.  During this time Muñoz continued to hold her supervisory position at Walgreens.   She took time off work to accompany her husband while he received treatment, all while receiving her salary, benefits and bonus. In February, 2002 Pérez; filed a charge with the EEOC against Walgreens and subsequently on September 2, 2002, he and Muñoz filed a civil case against Walgreens in this District Court, Civil Case No. 02-2325(PG) alleging employment discrimination based upon age, disability and retaliation.  Certain paragraphs of the complaint in Civil Case No. 02-2325(PG) and the complaint in this case are identical with the exception that the individual subject to discrimination is different.  Civil Case No. 02-2325(PG) ultimately settled and was dismissed with prejudice.

As of March 8,  2002, Muñoz was diagnosed with major depression.  Despite this condition she was able to perform the functions of her position without reasonable accommodation.  She informed Walgreens of her condition and indicated that it was the result of harassing, discriminatory and derogatory comments made by Dennis Santiago (hereafter "Santiago"), Walgreens' General Manager, against her husband Perez.  Muñoz claims that since at least March 8, 2002, she was substantially limited and could not perform the activities of eating, sleeping, or engaging in any sexual or reproductive activity.  Also she was unable to participate in house chores, take care of her children or her spouse.  Regardless, Muñoz asserts that she was able to perform each and every function and duty of her position at work

without any type of reasonable accommodation.  Muñoz also claims that after March, 2002;
Santiago relieved her of the majority of her job functions and duties.

Muñoz alleges that Santiago referred to her in derogatory terms with regard to her
mental condition, and used phrases implicating she was in the "twilight zone" and in the "left
field".  Also, Santiago would tell Muñoz that due to her depression she could not continue
to work and must resign.  Additionally, following settlement of Civil Case No. 02-2325(PG),
Santiago allegedly told Muñoz that because she was old, she should resign as her spouse had,
and assured her that Walgreens did not trust her because of the civil complaint she and Pérez
had filed.  According to Muñoz, Santiago constantly asked her about her age, how much time
was left before her retirement and the day when she would leave.  He also told her that due
to her age and depression she was slow in the performance of her functions and duties, and
was not as efficient as in the past when she was young and healthy.

Muñoz complained to Mike Tovian, Walgreens' Regional Vice-President and Myna Díaz
of Human Resources, that her job functions were being taken away despite the fact that her
job performance had at all times, been excellent.  She stated this occurred due to her age,
disability and request for reasonable accommodation and her opposition to Walgreens'
unlawful employment practices.  According to Muñoz, Walgreens did not conduct any type
of investigation or take any corrective measures.

Muñoz was hospitalized from March 5, 2003 to March 14, 2003, due to her psychiatric
condition of severe major depression.  She states that five to seven days prior to her
hospitalization she had asked Tovian and Díaz to relocate her to another position, outside the
supervision of Santiago, or in the alternative that her workload be reduced.  No action was

taken.

Walgreens' Absence Calendar for 2003 indicates that Muñoz was absent from work the entire month of March and that she did not return to work until April 3, 2003.  After that she worked from April 3rd through April 10th, was absent April 14th and 15th, and worked from April 16th through April 21, 2003.

According to Muñoz, upon her return to work after the March absence, Santiago and Tovian told her she should resign due to her mental and emotional condition, since she was unable to work.  Santiago also told her she should give the opportunity to work to a younger individual since she was old and sick and could not continue working for Walgreens, and he constantly threatened Muñoz with termination.  Muñoz continued to complain to Tovian and Diaz about the harassing and discriminating comments made by Santiago.

On April 21, 2003, Santiago threatened Muñoz with termination, and after said conversation she requested leave from work.  Muñoz saw her psychiatrist the next day and he ordered her to remain off work, while she received treatment.  April 21st was the last day in which Muñoz reported to work at Walgreens. She received her full monthly salary for six months after becoming disabled, until November 5, 2003.  She currently receives long term disability benefits at the rate of 60 percent of her basic monthly salary.

Walgreens held, on Munoz's behalf, the District Pharmacy Supervisor position for over a year by.  According to Walgreens, it temporarily hired persons to cover the functions of the District Pharmacy Supervisor position. The individuals hired were over 40 years of age at the time of hiring.  According to Muñoz from March, 2002; through April, 2003; her job duties were assigned to Cielo Birmaher, who was approximately 33 years old and had less

experience and seniority than Muñoz.

On September 12, 2003, Muñoz filed a charge before the Anti Discrimination Unit of the Puerto Rico Department of Labor and on October 22, 2003, she filed a charge before the EEOC.  She associated the alleged harassing conduct towards her with her husband's February 2002, filing of the EEOC charge and the September 2002, civil complaint.  She was discharged from her employment with Walgreens in June, 2004.

Muñoz continues to suffer from depression.  She states that notwithstanding this condition, she was able to perform and did perform the functions and duties of her position without any reasonable accommodation.  She further contends that after April 21, 2003, she would have been able to perform the functions and duties of her position as District Pharmacy Manager had Walgreens  provided her a reasonable accommodation.

Walgreens has a written policy prohibiting discrimination in the workplace.

## II.      Analysis

### A.      Legal Standard

Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm.,* 370 F.3d 215, 218 (1st Cir. 2004).   When ruling on a motion of summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir. 2004).  While carrying out that task, the Court safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez*

*v. Pueblo Int'l, Inc*., 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

An issue is "genuine" for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vásquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998).  Finally,  it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

**B.      Res Judicata**

Walgreens asserts that all causes of action in the present case related to the EEOC charge filed by Pérez on February, 2002; and the subsequent complaint filed in this Court on September 2, 2002, in Civil No. 02-2325(PG) are barred by the doctrine of *res judicata*.  Civil Case No. 02-2325(PG) was settled and the matter dismissed with prejudice. Walgreens specifically refers to Paragraphs 47, 48, 49, and 50 of the Complaint in Case No. 02-2325(PG), noting that they are identical to paragraphs 57 through 60 of the current complaint with the

exception that in Civil Case No. 02-2325(PG) the party referenced is Pérez and in the case at bar the party is Muñoz. Plaintiffs contends that *res judicata* does not apply to this cause on the basis that the release in Civil Case No. 02-2325(PG) did not release Walgreens from any claim for discrimination or harassment made by Muñoz against Walgreens.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." *Breneman v. United States ex rel. F.A.A.,* 381 F.3d 33, 38 (1st Cir. 2004) (citation omitted). *Res judicata* applies when there is: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Id.* This doctrine, also known as claim preclusion, serves the purpose of "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and. . .encourag[ing] reliance on adjudication." *Id*. (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)).

A voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the *res judicata* criteria. *Calderón-Rosado v. General Elec. Circuit Breakers,* 805 F.2d 1085, 1086 (1st Cir. 1986); *See also United States v. Cunan* , 156 F.3d 110, 114 (1st Cir. 1998) (citing *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 327 (1955) (judgment dismissing "the previous suit 'with prejudice' bars a later suit on the same cause of action"); *Langton v. Hogan,* 71 F.3d 930, 935 (1st Cir.1995) ("A judgment that is entered with prejudice. . . by stipulated dismissal. . .bars a second suit on the same claim or cause of action."); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 2376 at 319-320 (2d ed.

1995) ("Dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of *res judicata*. . . .")).

Civil Case No. 02-2325(PG) is similar to the case at bar in that the plaintiffs and defendants are identical, and both bring a cause of action for employment discrimination for age and disability discrimination, retaliation and supplemental state law claims.  There is, however, one glaring difference between Civil Case No. 02-2325(PG) and the case at bar:  the main plaintiff  is different in each case.  In No. 02-2325(PG) Pérez claims he was the victim of discrimination.  The claims brought by his spouse Muñoz were for her suffering as a result of the alleged discriminatory actions taken against her husband.  In this case, the roles are reversed.   Here, Muñoz claims she is the victim of discrimination and the claims brought by her spouse, Pérez, are for his suffering as a result of the alleged discriminatory actions taken against his spouse, Muñoz. Muñoz advises the Court that the release in 02-2325(PG) does not release Walgreens from any claims of discrimination brought by Muñoz.  At this stage, this Magistrate-Judge is unable to make its own determination inasmuch as, the release signed in the prior case is confidential and a copy of it was not provided for perusal.

Another difference between the two complaints is the time frame of the alleged discriminatory conduct.  In the case at bar the alleged wrongdoing commenced on or about February 13, 2002, when Muñoz's husband filed an EEOC complaint against Walgreens. Muñoz alleges that after the filing she was the victim of a harassing and discrimination campaign due to her age and in retaliation for her opposition and participation against Walgreens' unlawful employment practices.  The complaint also alleges that the actions of Walgreens caused Muñoz to suffer from severe depression which culminated in a

hospitalization.    It is further alleged that Muñoz's mental and emotional condition deteriorated to the extent that she was required to leave her position on April 21, 2003, until later discharged from the same in June, 2004.

In Case No. 02-2325(PG) Pérez alleged employment discrimination with the wrongdoing commencing on or about July 2000, following his return from receiving medical treatment for a serious medical condition.  As a result of the alleged discriminatory conduct Pérez ultimately filed an EEOC complaint on February 13, 2002, and he was discharged from his employment with Walgreens on May 20, 2002.  As previously noted, the February 13th filing of the EEOC charge by Pérez is the act that according to Muñoz triggered the alleged discriminatory conduct against her.

Muñoz complains of  subsequent conduct by Walgreens, that although of the same nature as the conduct complained of in the prior lawsuit, may give rise to an entirely separate cause of action. *Kilgoar v. Colbert County Bd. of Educ.,* 578 F.2d 1033, 1035 (5th Cir. 1978) (internal quotation omitted);  *See also González-Piña v. Rodríguez* 407 F.3d 425 (1st Cir. 2005); *Walsh v. International Longshoremen's Ass'n, AFL CIO, Local 799*, 630 F.2d 864, 873 (1st Cir.1980) (recognizing that *res judicata* did not bar "subsequent conduct [that] was broader and more far-reaching than the conduct which led to the original complaint").  Indeed, while there may be some overlap, the fact is that Muñoz's allegations of discriminatory conduct are separate and apart from those as alleged by Pérez and occur in a different time frame.

Based upon the foregoing analysis, the undersigned finds that *res judicata* does not

bar the present action. Therefore, it is RECOMMENDED that the motion for summary judgment on the basis of *res judicata* be DENIED.

       **C.**       **EEOC Claim**

       Walgreens contends that the claims alleging a harassing and discriminatory campaign and failure to provide a reasonable accommodation are time barred because Muñoz did not file the charges within the 300 day time limit as set forth in Title VII. Muñoz argues that her claim was timely filed based upon the continuing violation doctrine inasmuch as Walgreens' alleged unlawful employment practices continued incessantly and escalated up until Muñoz's last day of work on April 21, 2003.

       The ADA and the ADEA require that prior to filing a discrimination claim an aggrieved individual must file an administrative charge with the EEOC "within 180 days after the alleged unlawful employment practice occurred," or within 300 days if the person is in a deferral jurisdiction such as Puerto Rico. 42 U.S.C. § 2000e-5(e)(1); *American Airlines, Inc. v. Cardozo-Rodríguez*, 133 F.3d 111, 122 (1st Cir. 1998). Failure to timely file, if unexcused, "bars the courthouse door, inasmuch as, the Title VII's charge filing requirement is a prerequisite to the commencement of suit. *Bonilla v. Muebles J.J. Alvarez, Inc*., 194 F.3d 275, 278 (1st Cir. 1999). An "unlawful employment practice" applies "to a discrete act or single 'occurrence,' even when it has a connection to other acts," *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 111 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 112.

       The continuing violation doctrine applies to hostile work environment claims, which

"do not turn on single acts but on an aggregation of hostile acts extending over a period of time." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002). In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. The Court explained that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice.'" *Id.* at 117. Thus, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." *Id.* More so, prior conduct may be considered as "relevant background evidence," *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977), as well as alleged acts of harassment that fell outside the 300-day period for filing an EEOC charge of a discrimination complaint so long as there was an act contributing to the hostile environment within the 300-day filing period. *Crowley v. L.L. Bean, Inc*., 303 F.3d 387 (1st Cir. 2002).

On September 12, 2003, Muñoz filed a charge before the Anti Discrimination Unit of the Puerto Rico Department of Labor and on October 22, 2003, she filed a charge before the EEOC. Therefore, unless the continuing violation doctrine applies, any discriminatory acts that allegedly occurred prior to December 27, 2002 are time barred as they fall outside the 300 day period.  Muñoz's sworn statement to the EEOC charge stated that the campaign of harassment and discrimination began once her husband filed his discrimination charge and civil complaint for discrimination. As previously discuss, this occurred on February 13,  2002,

and September 4, 2002, respectively.  The sworn statement attached to Muñoz's EEOC charge contains no dates, but does contain allegations of continuous harassing conduct in the form of comments, pressures on job performance, reduction in functions and duties, unfair evaluations, exclusion from meetings and decision making processes, not sending Muñoz to training or seminars while sending younger employees to attend educational workshops, change in duties and demotion, reduction in privileges and benefits, and an overall hostile work environment.  All of the foregoing acts lead to the conclusion that there was a continuing violation as these acts appear to extend over a period of time.

Walgreens further argues, however, that Muñoz failed to amend her EEOC charge to include her claim that she was unlawfully discharged in May, 2004.  Muñoz contends that her termination grew out of and is related to the alleged harassment and discrimination by Walgreens.

The "continuing violation doctrine" does not preserve Muñoz's unlawful termination claim. In *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court reviewed the term "continuing violation," and held that a discrete discriminatory act transpires only at the time it takes place, even if it was related to acts that were timely filed. *Id.* The Court clarified that a discrete act is termination, failure to promote, denial of transfer, or refusal to hire.  *Id.* at 114.  More so,  "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180 or 300-day time period after the discrete discriminatory act occurred." *Id.* at 113.  The Supreme Court was clear that a discrete act constitutes a separate actionable unlawful employment practice. *Id.* at 114-115. Each incident of discrimination and each retaliatory adverse

employment decision constitutes a separate actionable "unlawful employment practice." *Id.* at 114.  Accordingly, Muñoz is barred from raising the May 2004 termination claim inasmuch as she has never raised the issue before the EEOC.  *See Bonilla,* 194 F.3d at 278.

It is therefore RECOMMENDED that the Motion for Summary Judgment to the extent it asserts that Muñoz failed to exhaust administrative remedies be DENIED, based upon the continuing violation theory; and that the Motion for Summary Judgment be GRANTED as it relates to defendant's allegation that Muñoz failed to amend her EEOC charge to include the termination claim.    This means that Muñoz is barred from recovery under her theory of unjust/unlawful termination.

### D.      The American with Disabilities Act

Walgreens moves for summary judgment asserting that Muñoz does not comply with the ADA's definition of a "qualified individual with a disability."  More particularly it argues that Muñoz is unable to perform the essential functions of her employment with or without accommodation.

The ADA prohibits certain types of discrimination in the workplace against an otherwise qualified individual with a disability.  42 U.S.C. § 12101 *et seq*. To establish a *prima facie* case of disability discrimination, under the ADA statutory-framework method, Muñoz must prove by a preponderance of the evidence: (1) that she is disabled within the meaning of the ADA; (2) that she is able to perform the essential functions of her job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on her disability. *Phelps v. Optima Health Inc.,* 251 F.3d 21, 24 (1st  Cir. 2001); *Marcano-Rivera v. Pueblo Int'l,* 232 F.3d 245, 251 (1st Cir. 2000); *García-Ayala v.*

*Lederle Parenterals, Inc.,* 212 F.3d 638, 646 (1st  Cir. 2000).

      Absent direct evidence that the defendants harbored a discriminatory animus in taking an employment action, the plaintiff must turn to the burden-shifting model established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973); *Sánchez v. Western Auto of Puerto Rico,* 68 F.Supp.2d 93, 98 (D.P.R. 1999). Under this framework, a plaintiff must first prove, by a preponderance of the evidence, that she  "(i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result." *Jacques v. Clean-Up Group.,* 96 F.3d 506, 511 (1st Cir. 1996).  Upon this showing,  the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802; *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 153 (1st Cir. 1990).  The employer's burden is merely one of production; the plaintiff retains the burden of persuasion at all times. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 823 (1st Cir. 1991).  Once the employer has met the burden of production, the ultimate burden falls on plaintiff to show that the proffered legitimate reason is pretextual and that the adverse employment action resulted from the employer's discriminatory animus.  *Bishop v. Bell Atl. Corp.,* 299 F.3d 53 (1st Cir. 2002).  It must always be kept in mind that in a disability discrimination case,  the plaintiff must establish the crucial element that he is disabled within the meaning of the Act. *See Cruz v. McAllister Bros., Inc*., 52 F.Supp.2d 269, 279 (D.P.R.1999) (citing *Arnold v. United Parcel Serv.*, *Inc*., 136 F.3d 854, 856-59 (1st Cir. 1998)).

Walgreens argues that Muñoz's allegation that she is unable to work is consistent with medical certificates provided by her psychiatrist during the year she remained off work.  Dr. Walter Pagán-Agostini stated that Muñoz was "unable to engage in productive work".  The defendants note that none of the medical certificates refer to any specific accommodation that would have made it possible for Muñoz to return to work.  Rather, the certificates state that she is to remain out of the workplace.  Therefore, it is Walgreens' position that Muñoz does not meet the definition of a qualified individual with a disability under the ADA.

Muñoz, of course contends that Walgreens is incorrect, and affirmatively asserts that she is covered by the ADA. It is Muñoz's position that her condition of a major depressive disorder, diagnosed by a psychiatrist, and regardless of the medications she takes, is a condition that substantially limits one or more of the major life activities of an individual. Muñoz states that her major life activities of driving, sleeping, eating and concentrating are substantially limited and/or affected. Also, she cannot perform household chores or take care of herself, her children or her husband.  She cannot relate or interact with individuals or engage in sexual activity.  She has severe short and long term memory loss.  She takes several medications to control her major depressive disorder.

The evidence on record shows that Muñoz has not been able to work since April 21, 2003.  However, she states that prior to that time she was able to perform the functions and duties of her position, and notwithstanding her severe depression, she continued to perform the duties of her position in an excellent manner and without any accommodation up to and until April 21, 2003 (**Docket No. 12**, p. 19). In a somewhat confusing manner, Muñoz also argues that in early April, 2003 she requested a reasonable accommodation at work, this

consisting of a reduction of her workload and a change to a   position with lesser responsibilities.  She further asserts having requested that she be assigned to work under a different manager.  Muñoz contends that Walgreens did not honor her request.   It is noted that Munoz assertion of having requested a reasonable accommodation is contrary to her statement that she was able to perform her position without accommodation up until April 21, 2003.  Nonetheless, it is undisputed that Muñoz has not worked since April 21, 2003, due to her mental and emotional condition.  It is also undisputed that for some time she received temporary disability benefits and now receives permanent disability benefits.

Walgreens appears to concede that Muñoz meets the first element of a *prima facie* under the ADA, in that she has a "disability" within the meaning of the ADA.  *See* 42 U.S.C. § 12102(2);  *Calero-Cerezo v. United States Dep't of Justice,* 355 F.3d 6,  20 (1st Cir. 2004) (a physical or mental impairment that substantially limits one or more of his major life activities; has a record of such an impairment; or is regarded as having such an impairment).  The Court must point out, however, that as of the day she last worked, Muñoz failed to meet her burden of proving she has a disability within the meaning of the ADA.  While she contends she was unable to perform certain major life activities prior to that date, the record belies this contention.

Major life activities are only those that are of central importance to daily life.  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002).  Major life activities are defined as those "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. §. 1630.2; *Gelabert-Ladenheim v. American Airlines, Inc*., 252 F.3d 54, 58 (1st Cir. 2001).  Also, sleeping has been recognized

as a major life activity.  *See Criado v. IBM Corp.,* 145 F.3d 437, 442-43 (1st Cir.1998) (stating that sleeping is a major life activity).

Muñoz provides no real evidence regarding her limitation of major life activities prior to April 21, 2003, with the exception of "working".  In order to succeed, Muñoz must show that her impairment "substantially limited" the performance of the claimed major life activity. Whether an individual's alleged disability substantially limits one or more of her major life activities is evaluated on a case by case basis.  *See* 29 U.S.C. § 706(2).  The fact of merely having an impairment does not make one disabled for purposes of the ADA. *Toyota Motor*, 534 U.S. at 195. Therefore, not only must the impairment affect a major life activity, but it must also substantially limit it. In particular, being substantially limited refers to being "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).  Other factors considered are: the nature and severity of the impairment, the length of time which the impairment is expected to continue, and whether or not the impairment can be characterized as a long-term condition.  *See* 29 C.F.R. § 1630.2(j)(2); *see also, Katz v. City Metal Co., Inc*., 87 F.3d 26, 31 (1st Cir. 1996).

The First Circuit Court of Appeals assumes that "working" is a major life activity. *Guzmán-Rosario v. United Parcel Serv., Inc*., 397 F.3d 6 (1st Cir. 2005). *e.g., Sullivan v. Neiman Marcus Group, Inc.,* 358 F.3d 110, 115-16 (1st Cir. 2004). EEOC regulations state that a plaintiff is "disabled" even if she can still work but if she is significantly restricted in or precluded from performing either a "class" of jobs--a set of jobs utilizing similar skills,

knowledge, and training to her prior job--or a "broad range" of jobs in various classes--a large set of jobs that vary in what skills are required. *See Gelabert,* 252 F.3d at 60 (quoting 29 C.F.R. §§ 1630.2(j)(3)(ii)- (iii)).  When looking at work as a major life activity, the First Circuit Appellate Court requires claimants to show that they are precluded from more than the performance of a particular job. *Guzmán-Rosario*, 397 F.3d at 11 (citations omitted).

Muñoz's own admission discounts any finding of a substantial limitation in working prior to April 21, 2003. Indeed, she states that she was able to adequately  perform her job up to and until April 21, 2003, apparently with or without accommodation.  That being the case, there is no evidence to support her position that she was significantly restricted in the major life activity of working. And, as noted, Muñoz presents no significant evidence to meet her burden of establishing a substantial limitation in other life activities, other than some conclusory allegations contained in her sworn statement.  Quite simply, Muñoz has not met her burden of showing a substantial limitation in her working capabilities prior to the time she stopped working.

On the other hand, the evidence before the Court is clear that after April 21, 2003, Muñoz was unable to perform the duties of her job. In this regard Walgreens contends that Muñoz is unable to meet the second element of a *prima facie* case inasmuch as, she is not otherwise a "qualified individual" because with or without accommodation, she cannot perform the essential functions of her job.  Walgreens points to Muñoz's contention that she is currently unable to work, noting that the same is consistent with the medical certificates provided by her psychiatrist during the year she remained off work.  More so, Walgreens points to the fact that none of the medical certificates specify the need for any type of

accommodation that would have made it possible for Muñoz to return to work.

It is uncontested that Muñoz has not worked since April 21, 2003. She argues that had she been provided with a reasonable accommodation she would be working today.  The truth remains that Muñoz has provided no evidence of when she intended to return to work or what accommodation was necessary after April 21, 2003 for her to be able to return to work. She has not controverted the medical records relied upon by Walgreens and  that do indicate that to date, she is unable to return to work.  It is Muñoz's burden to prove that at the time she sought to resume her job she was able to perform the essential functions of her job.  *See Soto-Ocasio v. Federal Express Corp*., 150 F.3d 14, 18 (1st Cir. 1998).  This she has failed to do.  Indeed, at the present time she receives long term disability benefits.  In this regards, First Circuit precedent provides that "if an ADA plaintiff was receiving, during the time she claims to have been denied reasonable accommodation, total disability benefits that were predicated on her inability to perform the job, then to defeat a motion for summary judgment she must make some type of showing that she was in fact able to perform the essential functions of her job during the time in question".   *See Soto-Ocasio,* 150 F.3d at 18.

Even viewing the facts in the light most favorable to Muñoz, the evidence on record does not support a finding that Muñoz is a qualified individual under the ADA.  Accordingly, it is RECOMMENDED that the Motion for Summary Judgment as to the ADA claim be GRANTED.


### E.    ADEA Claim

Walgreens next moves for summary judgment on the age discrimination claim raised

by Muñoz.  It argues that she cannot prove the elements of a *prima facie* case of age discrimination.  More specifically, it contends that while Muñoz is able to show that she belongs to a protected class, she is unable to meet the remaining requisites for a *prima facie* case.  Conversely, Muñoz contends that she has made a *prima facie* case of age discrimination, and that she was harassed, discriminated against and terminated as a result of her age.

### 1.    Age Discrimination

Under the Age Discrimination in Employment Act of 1967 ("ADEA"),  29 U.S.C. § 621 *et seq.,* "it is unlawful for an employer. . .to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually play a role in the employer's decisionmaking process and have a determinative or motivating influence on the outcome. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993)).

When there is no direct evidence of discrimination, the plaintiff may prove her case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Rivera-Rodríguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 25 (1st Cir. 2001); *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (2000); *Feliciano v. El Conquistador Resort and Country Club,* 218 F.3d 1, 5 (1st Cir. 2000).  It is the plaintiff's burden to establish a *prima facie* case of age discrimination and she "must adduce evidence that: (1)[she] was at least forty years of age; (2)[her] job performance met the employer's legitimate

expectations; (3) the employer subjected [her] to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged." *González v. El Día, Inc.,* 304 F.3d 63, 68 (1st Cir. 2002); *see also Baralt v. Nationwide Mut. Ins. Co.,* 251 F.3d 10, 17 (1st Cir. 2001). This *prima facie* showing creates a rebuttable presumption that the defendant-employer violated the ADEA. *González,* 304 F.3d at 69-70.  After the creation of such a presumption, the burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." *Id.* at 70; *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981).

Walgreens argues that Muñoz has not established *prima facie* case of age discrimination. More particularly, it argues that Muñoz cannot show that she met her employer's legitimate employment expectations, that she was subjected to an adverse employment action or that Walgreens did not treat age neutrally or that younger persons were retained in the position.

After reviewing the facts in the light most favorable to Muñoz, at first blush it appears plaintiff has established a *prima facie* case of age discrimination.  She is in the protected age group, her job performance met her employer's legitimate expectations, she suffered an adverse employment action in that he job duties were reduced, she was not allowed to attend seminars and ultimately she was terminated,  and her employer had a continuing need for the services provided by the position from which the claimant was discharged.

The undersigned is mindful of Muñoz's claims that she was subjected to a harassing and discriminatory campaign due to her age.  She makes reference to several comments made

by her supervisor Santiago, some that refer to age and others that do not.  For example, Muñoz was told by her supervisor, Santiago that she should resign since she was "old" and Walgreens did not trust her.  He also constantly asked her about her age, when will she qualify for retirement and when she would leave. Miranda contends that after she left work all the duties and responsibilities of her position were performed by Cielo Birmaher, who is 33 years old.  Plaintiff also alleges that prior to the time she stopped working, Walgreens had assigned to Birmaher the functions and duties normally performed by Muñoz.

As discussed, it appears that Muñoz meets the elements of a *prima facie* case. Nonetheless, even if the *prima facie* case is undecided, "this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a *prima facie* case." *Fontánez-Nuñez v. Janssen Ortho, LLC,* 360 F.Supp.2d 377, 395 (D.P.R. 2005) (quoting *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir. 1996); *see also Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir. 1985) ("The *prima facie* threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a *prima facie* showing of discrimination").  Accordingly, the undersigned will consider whether Walgreens establishes legitimate, nondiscriminatory reasons for Muñoz's termination. *See Alvarez-Cabrera v. Trataros Construction Inc.,* 184 F.Supp.2d 149 (D.P.R. 2002) (holding that the *prima facie* case and the employer's non-discriminatory reason are "irretrievably intertwined" where the employer asserts that it discharged the plaintiff because her job performance was not satisfactory, and thus it was necessary to examine Defendants' non-discriminatory reasons) (quoting *Lawrence v. Northrop*

*Corp.,* 980 F.2d 66, 69 (1st Cir. 1992)).

A plaintiff may establish pretext by demonstrating "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradiction in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 56 (1st Cir. 2000) (quoting *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998)).   "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts.  The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as pretext." *Loeb v. Textron*, 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979); *see Resare v. Ratheon Co.*, 981 F.2d 32, 42 (1st Cir. 1992)

Walgreens has submitted as its legitimate, non-discriminatory reason for Muñoz's termination from employment the need for it to properly continue with the normal operation of its business.  Walgreens explains that Muñoz commenced disability under the Walgreens Disability Program on April 30, 2003 and remained under the program for over a year, unable to return to work. Walgreens complied with the reserve for employment requirements under Puerto Rico workers' compensation statute, 11 P.R. Laws Ann. § 203(q), but to date Muñoz is still unable to return to work.

In turn, Muñoz claims the reason she could not continue working after April 21, 2003, is because her employer failed to provide her with a reasonable accommodation or take remedial measures to end the hostile working environment.  Muñoz appears to intermingle her ADA claim with her age discrimination claim.  Despite the confusing argument, she has not overcome Walgreens' legitimate, non-discriminatory reason for her discharge.  There is

nothing in the record to indicate that she was terminated other than for her inability to return to work and Walgreens' need to properly operate its business.   More so, as previously discussed, Muñoz failed to administratively exhaust the claim of unlawful/unjust discriminatory discharge.

Based upon the foregoing, it is therefore RECOMMENDED that the Motion for Summary Judgment as to the issue of wrongful termination brought under the ADEA be GRANTED.

### 2.        Hostile Work Environment

Muñoz's complaint also raises the issue of a hostile work environment on account of age.  This claim is not addressed by Walgreens in its motion for summary judgment.

To succeed in a hostile work environment claim, a plaintiff must prove,

> (1) that she is a member of a protected class; (2) that she was subjected to unwelcome [ageist] harassment; (3) that the harassment was based upon [age]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001) (citations omitted).

Inasmuch as, there is no motion for summary judgment on the issue of a hostile work environment, same is not addressed and it remains a viable claim.

### F.        Supplemental State Claims

As a general rule, where the district court dismisses the federal claims before trial, the

court should dismiss the state law claims without prejudice.  *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995).  Walgreens argues that because Plaintiffs did not comply with the administrative requisites necessary to file a discrimination claim, this Court lacks jurisdiction to resolve the issues raised.  Because there remains pending a federal claim - age discrimination based upon a  hostile work environment -  at this time it is premature to consider dismissal of the state claims.

In the alternative to dismissal, Walgreens argues that Plaintiffs have no cause of action under Laws 80, 100 and Article 1802.  Each will be addressed in turn.

### 1.    Law 80

Law 80 is also known as Puerto Rico Wrongful Discharge Act.  It seeks to protect individuals in their employment by requiring employers to indemnify them if discharged "without just cause". 29 P.R. Laws Ann. § 185a.  Law 80 provides numerous defenses for dismissal, such as "improper or disorderly conduct," and "[r]epeated violations by the employee of the reasonable rules and regulations established for the operation of the establishment. . ." among others.  29  P.R.Laws Ann. § 185b. The reason offered by Walgreens for Muñoz's  dismissal is not listed within any of the authorized reason for dismissal. Nevertheless, the reason proffered is one the Court considers "just cause".  That is, she is unable to return to work and Walgreens has need for proper and normal operation of its business.  More so, in compliance with Puerto Rico law, Walgreens kept Muñoz's position available for her return for the applicable time period. Muñoz's only rebuttal is that Walgreens did not provide her with a reasonable accommodation, yet she cannot escape the fact that the

evidence shows she can not return to work, even with such an accommodation.

Accordingly, it is RECOMMENDED that the Motion for Summary Judgment as to the Law 80 claim be GRANTED.

### 2.    Law 100

Like the ADEA claim, Muñoz alleges violations of Puerto Rico law arising out of the same nucleus of operative facts that gave rise to her federal claims. Law 100 is the local equivalent of ADEA providing for civil liability for age discrimination in employment. *De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 119 (1st Cir.2004); *Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.,* 152 F.3d 17, 27 (1st Cir.1998); *Varela-Terón v. Banco Santander de Puerto Rico,* 257 F.Supp.2d 454, 462 (D.P.R.2003).  "Under Law 100, a plaintiff establishes a prima facie case of age discrimination by (1) demonstrating that [she] was actually or constructively discharged, and (2) alleging that the decision was discriminatory."*De La Vega v. San Juan Star, Inc.,* 377 F.3d at 119 (citing *Baralt v. Nationwide Mut. Ins. Co.,* 251 F.3d 10, 16 (1st Cir. 2001)). Although the federal and state statutes differ on their respective burden of proof allocations, the main distinction is that Law 100 establishes a rebuttable presumption of discrimination unless the employer can demonstrate that the action in dispute was justified. *Alvarez-Fonseca,* 152 F.3d at 27; *Varela-Terón,* 257 F.Supp.2d at 463. *See, Ramos v. Davis & Geck, Inc.,* 167 F.3d 727, 734 (1st Cir. 1999) ("significant differences in the burden of proof requirements under the ADEA and Law 100"); *see also Rodríguez-Torres v. Caribbean Forms Manufacturer, Inc.,* 399 F.3d 52 (1st Cir. 2005).

Despite the somewhat different evidentiary structure of Law 100 in proving age discrimination, the result under a Law 100 unlawful discharge claim is the same as in the

ADEA claim.  Muñoz failed to show that her termination was unjust and as a result the burden did not shift to Walgreens.  *See Alvarez-Fonseca v. Pepsi Cola of P.R.,* 152 F.3d 17, 27-28 (1st Cir.1998) (holding that the burden of proof shifts to the employer under Law 100 after the employee *proves* an unjust termination);   *Rodríguez-Torres v. Caribbean Forms Manufacturer, Inc*., 399 F.3d 52 (1st Cir. 2005).   Nonetheless, even assuming that the presumption of discrimination was triggered, Walgreens met its burden of presenting ample evidence establishing that its decision to terminate Muñoz was not motivated by her age whereupon the presumption ceased. Without being redundant, suffice it to say that as to the unjust discharge claim, there remains no genuine issue of material fact and summary judgment is appropriate.   The hostile work environment claim brought under Law 100 remains pending.

Accordingly, it is RECOMMENDED the Motion for Summary Judgment as to the Law 100 age discrimination claim for unjust discharge be GRANTED.

### 3.      Article 1802

Last, Walgreens moves for Summary Judgment on the tort claim brought by plaintiffs. Puerto Rico Civil Code section 1802 provides for damages caused by a defendant's negligent behavior. This general tort statute can be brought upon violation of Law 100. *See, e.g., Santini Rivera v. Serv. Air, Inc.,* 137 P.R. Dec. 1 (1994). Because Muñoz's claim under Law 100 for a hostile work environment remains pending, the claim for damages under this statute is necessarily upheld.

Accordingly, it is RECOMMENDED that the Motion for Summary Judgment as to the Article 1802 claim be DENIED.

### III.    Conclusion

It is therefore RECOMMENDED that Defendants' Motion for Summary Judgment (**Docket No. 10**) be **DENIED** in part and **GRANTED** in part as follows:

–    that the Motion for Summary Judgment on the basis of *res judicata* be **DENIED**;

–    that the Motion for Summary Judgment predicated on the fact that Muñoz failed to exhaust administrative remedies be DENIED, based upon the continuing violation theory; and that the Motion for Summary Judgment be **GRANTED** on the issue that Muñoz failed to amend her EEOC charge to include the unlawful/unjust termination claim;

–    that the Motion for Summary Judgment as to the ADA claim be **GRANTED**;

–    that the Motion for Summary Judgment as to the issue of wrongful termination brought under the ADEA be **GRANTED**;

–    that the Motion for Summary Judgment as to the Law 80 claim be **GRANTED**;

–    that the Motion for Summary Judgment as to the Law 100 age discrimination claim for unjust discharge be **GRANTED**; and,

–    that the Motion for Summary Judgment as to the Article 1802 claim be **DENIED**.

Should this Report and Recommendation be adopted the claims that remain viable are the ADEA and Law 100 age discrimination hostile work environment claim and the supplemental claim brought pursuant to Article 1802 laws of Puerto Rico.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to

appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

SO RECOMMENDED.

At San Juan, Puerto Rico, on this 29th  day of August, 2005.

**S/AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**