## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MILDRED MUÑOZ RIVERA, et al.**
**Plaintiffs**

**v.**                                                    **CIVIL No. 04-1766 (DRD)**

**WALGREENS Co. et al.**
**Defendants**

### OPINION AND ORDER

Before the Court is a civil action (Docket No. 1) brought forth by plaintiffs, Mildred Muñoz and Cesar Perez, together with the conjugal partnership, against defendants Walgreens Co., under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §1211 et seq, the Age Discrimination in the Employment Act (ADEA), 29 U.S.C. §621 et seq., and section 704 (a) of Title VII.  Plaintiff, Mildred Muñoz, alleges she was discriminated by the defendants by reason of disability, requests for a reasonable accommodation, age, retaliation and violation of civil rights. Further, plaintiffs have filed other causes of action under supplemental jurisdiction, to wit, that include Law Number 80 of May 30, 1976, P.R. Laws Ann. Tit.29 §501 et seq; Law Number 115 of December 20, 1991, P.R. Laws Ann. Tit. 29  §194 (a) Law Number 100 of June30, 1959, as amended  P.R. Laws Ann. Tit. 29 §146 et seq, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 §1541.

Pending before the Court is Defendants' *Motion for Summary Judgment* (Docket No. 10) moving the Court to dismiss plaintiffs' claims on account that: (a) the causes of action asserted in the complaint are barred in whole or in part, by the *res judicata* doctrine; (b)plaintiffs' failed to exhaust administrative remedies for the alleged discriminatory acts occurring before December 27, 2002; (c) plaintiffs' failed to amend the EEOC charge to include the termination claim; (d) plaintiff cannot be considered a "qualified individual with a disability" as that term is defined by ADA; (e)

plaintiff has failed state a cause of action under the Age Discrimination in Employment Act; (f) the court should decline to exert jurisdiction over the supplemental state law claims inasmuch as there are no federal claims pending; (g) plaintiffs' have failed to establish a cause of action under Law 80; (h) plaintiffs have failed to establish an action pursuant to Law 100; and (i) Article 1802 of the Puerto Rico Civil Code does not provide a remedy to plaintiff's spouse.  On June 8, 2005, the undersigned referred the instant case to the Magistrate Judges for a Report and Recommendation (R&R) on the pending motion for summary judgment (Docket No. 24).

On June 9, 2005 the Clerk of Court, through the random drawing assignment system, assigned Magistrate Aida M. Delgado said R&R (Docket No. 25).  Magistrate Judge Aida M. Delgado issued her R&R on August 29, 2005 (Docket No. 26) recommending that defendant's motion for summary judgment be granted in part and denied in part.

On September 13, 2005 , plaintiffs filed an *Objection to the Report and Recommendation*, (Docket No. 28), sustaining that the *Report and Recommendation* (Docket No. 26), should be rejected because the Magistrate Judge incorrectly concluded that: (a) defendants had a legitimate business reason for discharging Muñoz, and as a result, plaintiffs' claim under ADEA, Law Number 100, and Law Number 80, should be dismissed; (b) plaintiff Muñoz had to amend her discrimination charge before the EEOC, to include her termination claim; (c) plaintiff Muñoz is barred from raising a termination claim since  she failed to raise the issue previously before the EEOC, and (d) plaintiff Muñoz was not a disabled individual under ADA.  Plaintiffs, also, aver that the *Report and Recommendation*, failed to considered and never addressed, defendant's intentional actions against Muñoz, relating to its failure to provide a reasonable accommodation, as well as defendants' harassing and discriminatory actions, which resulted in creating a hostile work environment against Muñoz.

Defendants also timely filed a *Partial Objection to Magistrate's Report and Recommendation*, (Docket No. 29), contesting the *Report and Recommendation* on the *res judicata* issue and its consideration of the age discrimination hostile work environment as a viable cause of action.

For reasons stated herein, the *Report and Recommendation* is **ACCEPTED IN PART** and **REJECTED IN PART**.  Hence, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's *Motion for Summary Judgment*.  (Docket No. 10).

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See*, <u>Mathews v. Weber</u>, 423 U.S. 261 (1976). Of course, an adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections within ten (10) days after being served a copy thereof. *See,* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

The "written objections shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections." Local Rule 72 (d).  Provided that Plaintiffs, have objected the Magistrate's determination. the Court shall make a de *novo* review of the conclusions contained in Magistrate's Report and Recommendation.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to the language of the Rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortes-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir., 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir., 1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party – as may arise in actions under § 1983 – will normally preclude the Court from granting summary judgment. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); see also Tew v. Chase Manhattan Bank, N.A., 728 F. Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'").  However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## UNCONTESTED FACTS

Plaintiff-Mildred Muñoz began to work at Walgreens, as a pharmacist, in August 3, 1981. After  ten (10) years of service, Muñoz had already achieved the position of District Pharmacy Supervisor.

During the month of September 1999, Muñoz's husband, Cesar Perez, was diagnosed with Chronic Lymphocytic Leukemia.  Back then, he occupied the position of Store Manager at Walgreens.  When Cesar Perez returned to work, after being absent for an unspecified period of time due to his medical treatment, he was subjected to a campaign of harassment and discrimination by the defendants.  The situation provoked Perez to file, in or around February 13th 2002, a claim of discrimination because of age and disability, before the Anti-Discrimination Unit of the Department of Labor (A.D.U.) and the Equal Employment Opportunity Commission (hereinafter EEOC). In the

course of the litigation, Muñoz was announced as a witness in favor Cesar Perez and against the defendants.

On  March 8, 2002, Muñoz visited a psychiatrist who concluded that she was suffering a severe depression.  The medical record indicates that Muñoz was diagnosed with low self esteem, anxiety, sleeping problems, loss of interest, chest pressure, reduced concentration and memory, allegedly, as a result of Walgreen's discriminatory actions against her husband.

Around September 2002, Perez filed a complaint before other sister Court within this District, case number 02-2325 (JP), alleging discrimination because of age, disability and multiple request for reasonable accommodations.  Further, Perez  alleged retaliation for the filing of discrimination charges.  Muñoz appeared as co-plaintiff in her husband's complaint, and in the present complaint Muñoz alleges that it was at this point that Walgreens began harassing her. Allegedly, Walgreen's officers started to make discriminatory and derogatory comments to Muñoz caused by her appearing as co-plaintiff in her husband's claim. Muñoz avers that defendants' comments were geared to persuade her to withdraw from her husband's case, stating that her husband's case was frivolous and without merit, that the company no longer trusted her because of her participation in the case, and that she should resign from her employment.  *See*,(Docket No. 1 ¶27). Further, Muñoz  alleges that defendants took away some of her most important duties and assigned them to employees younger than her. Moreover, Muñoz avers that she was excluded  from trainings, seminars, continued education courses, officers meetings and reunions, but once her husband's complaint was filed she was excluded from all participation therein.

From March 5, 2003 to March 14, 2003, Muñoz received treatment for  severe major depression at First Hospital Panamericano and remained off work the entire month of March, 2003. In fact, according to Walgreens' Absence Calendar for the year 2003, Muñoz returned back to work

on April 3rd, 2003.  She worked from April 3rd to April 10th, and then reported back to work from April 16th through April 21st.  On her last day at work, she had a conversation with one of Walgreens officers, Mr Santiago, who allegedly told her that she should resign.  Shortly after, Muñoz saw her psychiatrist, who ordered her to remain off work, while she received medical treatment.  It should be noted that Muñoz received her full salary for the next six months after her last day on the job. At the time the instant complaint was filed, Muñoz received long term disability benefits at the rate of 60 % of her basic monthly salary.

On September 12, 2003, Munoz filed a claim before the Anti Discrimination Unit of the Puerto Rico Department of Labor.  Then, on October 22, 2003, she filed a charge before the EEOC.

On or around May or June, 2004, Muñoz was terminated from her employment with Walgreens.  A month later, on July 26, 2004, Muñoz filed the instant complaint against Walgreens alleging discrimination by reason of reasonable accommodation, age, retaliation and violation of her civil rights.

## LEGAL ANALYSIS

In the instant case, plaintiffs and defendants move the court to reassess the conclusions reached by Magistrate Judge Delgado before adopting the *Report and Recommendation* (Docket No. 28) issued on September 13, 2005, relating to Walgreens' *Motion for Summary Judgment* (Docket 10-2).

## A. RES JUDICATA DOCTRINE

Defendants object the *Report and Recommendation* (Docket No. 28) asserting that the causes of action in the complaint are barred in whole or in part by the res judicata doctrine.  Defendants emphasize that plaintiff's intention is to bring forth, in the present case, specific causes of action previously included in her husband's complaint, already litigated and settled by the court.  Upon

review of the allegations in both complaints, defendants now stress that plaintiffs in the previous complaint mentioned Muñoz by the use of references such as "**disabled employees**" and "all its employees that were also **over the protected age, claimed to be disabled and claimed to be subject of retaliation**" (Docket 10-2, P. 6) (emphasis added). Defendants explain Muñoz's inclusion in the previous complaint, stating that by "the time the [previous complaint] was filed, and most certainly by the time the complaint was settled, plaintiff Mildred Muñoz was over the protected age group, claimed to be disabled and claimed to be subject of retaliation after engaging in a protected activity." See, (Docket No. 10-2 P. 6). The Magistrate Judge concluded that defendants' defense of res judicata does not operate in the instant case. The Court agrees.

It is well settled law that the doctrines of ***res judicata* and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action for which judgment has been rendered**. Baez-Cruz v. Municipality of Comerio, 140 F.3d 24 (1st Cir. 1998); Apparel Art International, Inc. v. Amertex Enterprises Ltd., 48 F.3d 576 (1st Cir. 1995), quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411 (1980); *see also* Parklane Hoistery Co., Inc. v. Shore, 439 U.S. 322, 326, n. 5, 99 S.Ct. 645, 649 (1979). The First Circuit has also indicated that "*res judicata* operates as an absolute bar to the relitigation of the same cause of action between parties (or their privies) **and that a prior judgment rendered on the merits is conclusive not only to the issues which were determined but as to all matters which might have been determined as well**." Westcott Const. v. Firemen's Fund of New Jersey, 996 F.2d 14, 16 (1st Cir. 1993)(*quoting* Griffin v. State of R.I., 760 F.2d 359, 360 (1st Cir. 1991))(emphasis added). In fact, even if the claims were grounded strictly under Puerto Rico law, nonetheless preclusion includes "claims that were raised or could have been raised." Colon Padilla v. San Patricio Corp., 81 D.P.R. 242, 264 (1959); Perez v. A.F.F., 87 D.P.R. 118 (1963). **"[O]nce a court has decided an issue of fact or law necessary**

to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." United States v. Mendoza, 464 U.S. 154, 158, 104 S.Ct. 568, 571 (1984)(emphasis added).  Pursuant to federal law, at least three elements must be present in order for a claim to be barred as a result of a judgment in a prior action, to wit, 1) there must have been a final judgment on the merits; 2) the prior action must have involved the same parties or their privies; and 3) the prior action must have involved the same claim.  18 Moore's Federal Practice and Procedure, §131.01 (Matthew Bender 3d ed.).  However, several courts have added a fourth prong to the test, whether the judgment entered in the prior action was entered by a court of competent jurisdiction.  Id.

Upon a foregoing analysis of the three prong test, the Court finds and agrees with the Magistrate Judge that defendants are precluded from asserting the doctrine of res judicata in the case at bar.  Aside from the rationale already provided by the Magistrate Judge in its *Report and Recommendation*, the undersigned finds it necessary to explain even further why defendants are precluded from asserting res judicata as a defense in this case. At the outset, the Court notes that there is no basis to raise res judicata as a defense solely on the fact that plaintiff's spouse complaint was filed, Muñoz met the description provided in the specific allegations in 02-2325 (JP). Defendants sustain that plaintiff is barred by the res judicata doctrine to pursue the instant claim because there are allegations in the instant complaint and in her spouse's complaint that are identical. Specifically, defendants affirm that paragraphs 57 through 60 in the captioned case are identical to paragraphs 47 through 50 in her spouse's complaint.  Consequently, defendants aver that plaintiff's action amounts to a relitigation of identical causes of actions which were previously settled and dismissed.  The Court does not find support in defendant's theory.  The defense of res judicata operates to preclude relitigation of claims which have or could been litigated and/or raised in a prior judicial action.  In other word, in order to apply the defense of res judicata against Muñoz, she must

appear in the same capacity as plaintiff litigating the same causes of action in both complaints.

An examination of the allegations in both complaints reveals, at first glance, identical causes of action, to wit, ADA, ADEA, Title VII, termination of employment, and damages claimed by plaintiff's spouse, but the reality is that there is lack of identity amongst the injured party in both complaints. The Court explains.

As the Magistrate Judge reasoned the difference rest in the identity of the main plaintiff and, more important, the time frame of the alleged wrongdoing. Examining the time frame of the alleged wrongdoing the Court notes that plaintiff's claims covers the period from 2002 throughout 2004. However, plaintiff's spouse claims in Civil No. 02-2325(JP) covers the years 2000 through 2002. Hence, at the time Muñoz's spouse complaint was filed the facts that gave rise to the instant complaint could not have been litigated in the prior judicial action for which judgment was entered simply because these facts had not matured. (*See*, <u>Breeman v. United States ex rel F.A.A.</u>, 381 F. 3d 33 (1st Cir. 2004)). Moreover and most critical, in the previous complaint plaintiff Muñoz was a plaintiff claiming consequential damages resulting from the discriminatory conduct suffered by her husband; while in the instant case, plaintiff Muñoz is the victim of alleged discriminatory actions. It is impossible, then, to conclude that the res judicata doctrine is applicable to the case at bar. Accordingly, the Report and Recommendation is **ACCEPTED**, hence, defendants' motion for summary judgment on the res judicata issue is **DENIED**.

## B. FAILURE TO AMEND THE EEOC CHARGE TO INCLUDE TERMINATION CLAIM

Defendants' moved for summary judgment sustaining that plaintiffs' discharge claim is time barred due to plaintiff's failure to amend the EEOC charge and include said discharge claim. In its R&R, the Magistrate Judge agreed with defendant's position and recommended that plaintiff's discharge claim should be dismissed due to plaintiff's failure to amend her EEOC charge to include the termination claim prior to file a judicial action. The *Report and Recommendation* specifically

indicates that "Muñoz is barred from raising the May 2004 termination claim inasmuch as she has never raised the issue before the EEOC." (*See*, Docket 26, P. 14).  Accordingly, the court must determine if Muñoz had to amend her EEOC claim before including her discharge claim in the instant judicial action.

It is black letter law that "as a condition precedent to a Title VII suit in federal district court, a plaintiff must exhaust administrative remedies." Owens v. D. West Jr., 182 F. Supp. 2d at 192, 180-197 (1st Cir. 1990), (citing Brown v. Gen. Servs. Admin., 425 U.S. 832, 96 S.Ct. 1961 (1976)). The "exhaustion [of administrative remedies] exists to protect employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." Kenney v. MML Investors Services, Inc., 266 F. Supp. 2d at 244, 239-249 (D. Mass. 2003), (citing Eldeman v. Lychburg College, 535 U. S. 106, 122 S. Ct. 1145, 1149, 1452 L. Ed. 2d 188 (2002)).  Failure to comply with the exhaustion requirement provides grounds for immediate dismissal for lack of jurisdiction. Id  However, the administrative exhaustion requirement, requires that the administrative charge be filed within a given time frame. In other words, the administrative charge must be filed within the given statute of limitations.  The jurisprudence has stated that an administrative charge must be presented:

> within one hundred and eighty days after the alleged unlawful employment practice occurred" or within three hundred if the person is in a "deferral jurisdiction" such as Puerto Rico, 42 U.S.C. §2000e-5(e) and that the lawsuit be brought within an even shorter period (90 days) after notice that the administrative charge is dismissed or after the agency instead issues a right-to-sue letter.

Clockedile v. New Hampshire Department of Corrections, 245 F. 3d 3, 1-7 (1st Cir. 2001).  Hence, the exhaustion of administrative remedies of a Title VII claim has "two key components: the timely filing of a charge with the EEOC, and the receipt of a right to sue letter from the agency or the notice that the administrative charge has been dismissed. (*See*, Jorge, v. Rumsfeld, 404 F. 3d 564, 556-566

(1st Cir. 2005); Mc Donnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817 (1973)).

Notwithstanding, the First Circuit has recognized an exception to the requirement to exhaust administrative remedies in Title VII causes of action.  The Clockedile court determined that "[T]itle VII does not say that the court must be limited to just what was alleged in the agency complaint." Clockedile, 245 F. 3d at 5.  Furthermore, the Clockdile court reasoned that under the "reasonably related" test, "retaliations claims never raised before the EEOC or other relevant agencies are preserved so long as the retaliation is **reasonably related to and grows out of** the discrimination complained of to the agency."  Owens, 182 F. Supp. 2d at 192-193 (citing Clockedile 245 F. 3d at 6) (emphasis added). Consequently, the fact that a plaintiff may preserve a retaliation claim even though it failed to exhaust the administrative requirement shows, the "First Circuit['s concern] with retaliatory conduct which arises after, if not as a result of, an employee's invocation of the EEOC process."  Kenney, 266 F. Supp. 2d at 245-246.

In the case at bar, the Magistrate Judge recommended to dismiss Muñoz discharge claim for her failure to exhaust administrative proceedings, inasmuch as she never raised the issue before the EEOC.  (*See*, Docket 26, P. 14).  The Court disagrees with the recommendation as to the discharge claim.  The Court explains.

Defendants correctly assert that Muñoz failed to amend her administrative charge before the EEOC to include a termination claim.  However, Muñoz is not precluded from bringing forth a termination claim in the instant action, because "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency –e.g., the retaliation is for filing the agency complaint itself."  Clockedile, 245 F. 3d. 6.

In the captioned case, Muñoz filed charges for discriminatory conduct before the EEOC against her employer Walgreens, Co.  On May 20, 2004, the EEOC issued a  right to sue letter. Further, on that same month Muñoz was discharged from her employment.  Shortly after, on July

27, 2004, Munoz filed the instant complaint charging Walgreens with discriminatory conduct based on age and disability, and retaliation. The Court notes that the judicial complaint includes the discharge claim not filed before the EEOC. The Court deems that given these facts, Muñoz's discharge claim is reasonably related to and grows out of the discriminatory charges presented before the EEOC. All charges filed by plaintiff before this Court, including the discharge claim, are for alleged discriminatory acts based on age, disability and retaliation within a set time frame. The administrative charges filed by plaintiff before the EEOC sustain that defendant discriminated against plaintiff because of her age and her alleged disability. As in Clockedile, there is time proximity between the issuance of the right to sue letter and the adverse employment action, occurring within the ninety (90) days statutory term to file the judicial action. *See,* Kirkland v. Buffalo Bd. of Education, 622 F.2d 1066 (2nd Cir. 1980); Trindade v. Leavitt, 2005 WL 1541050, (E.D.N.Y. June 30, 2005); Patel v. Lutheran Medical Center, Inc., 753 F.Supp. 1070 (E.D.N.Y. 1990). Therefore, the R&R is **REJECTED**, and defendant's motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies is hereby **DENIED**.

## C. ADEA CLAIM

Defendants aver that plaintiff-Muñoz lacks a cause of action pursuant to the Age Discrimination in Employment Act (hereafter ADEA), because she has failed to establish the elements of a prima facie case proving that she was discriminated because of her age. In the R&R, the Magistrate Judge concluded that Muñoz has not established a prima facie case of age discrimination because plaintiff appears to have convoluted the facts relating to both plaintiff's ADA and ADEA claim.

For a plaintiff to prove an ADEA cause of action, direct or indirect discriminatory evidence can be brought forth to prove that an adverse employment action occurred as a result of a discriminatory practice based on age. On that subject, the First Circuit has indicated that the trial

court must evaluate the evidence presented as whole in order to determine if such evidence, whether direct or indirect, is sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by age animus.  *See*, Hidalgo v. Overseas Condado, 120 F.3d 328, 335 (1st Cir. 1997)(*citing*, LeBlanc  v. Great American Ins. Co., 6 F.3d at 843).

In the absence of direct evidence, a plaintiff may prove discriminatory evidence through the well established McDonnell Douglas framework. *See*, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The employee must initially come forward with sufficient evidence to establish a prima facie case of discriminatory discharge. Thus, the employee must establish that: (i) she is a member of a protected class (i.e. over forty years of age); (ii) her job performance was sufficient to meet legitimate job expectations; (iii) she experienced an adverse employment action; and (iv) the employer did not treat age neutrally.  Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1997); Goldman v. First Nat'l. Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). The required prima facie showing is not especially burdensome.  *See*, Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995); Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir. 1994),  Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 n. 4 (1st Cir. 1994); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993).

Once the plaintiff has met this relatively light burden, a presumption of discrimination arises and the onus is then shifted to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991). If the employer produces such a justification, the presumption of discrimination vanishes and the burden shifts back to the Plaintiff to show that the employer's alleged justification is merely a pretext for discrimination. Serrano-Cruz, *supra*, at 25-26; Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994).

Plaintiff is then required to do more than simply refute or cast doubt on the employers' rationale.  The First Circuit has traditionally required anticipating Supreme Court precedent evidence

that "is not only minimally sufficient evidence of pretext, but that overall reasonably supports a finding of discriminatory animus." LeBlanc, 6 F. 3d at 846.

In the instant case, and examining the threshold elements of an ADEA prima facie case, the Court finds that plaintiff Muñoz does have a cause of action pursuant to ADEA.   First, plaintiff-Muñoz has proven that she is member of the protected class of individuals over 40 years of age.   Second, plaintiff has performed the work according to defendants' legitimate job expectations.   Third, she avers to have experienced adverse employment action because: 1) her most important functions and duties were assigned to employees younger her; 2) she was alienated from participating on seminars, continued education programs or trainings while employees younger than her participated in them; 3) plaintiff's supervisors told her on several occasions that they wanted new and younger managers working for them; 4) defendants repeatedly asked plaintiff's age, and the time left for her retirement, 5) defendants substituted and/or replaced plaintiff with employees much younger than her.   The Court notes that since defendants have only challenged the allegation relating to plaintiff being substituted with employees younger than her hence, should plaintiff survive the challenge made by defendants, all other allegations sustaining the adverse employment action suffered by plaintiff remains as basis for an ADEA colorable claim since the law in this circuit is that issues not raised previously are deemed waived.   Davet v. Maccarone, 973 F.2d at 30-31.

Defendants filed for brevis disposition sustaining that plaintiff cannot claim that her discharge was based on her age.   The Magistrate Judge's R&R determined that plaintiff failed to establish a prima facie case under ADEA sustaining her discharge claim.   (See, Docket No. 26, P. 25).   The Report and Recommendation also points out  that the record is devoid of evidence indicating that plaintiff was terminated for a reason other than plaintiff's inability to return to work and Walgreens' need to properly operate its business.   (See, Docket No. 26,  P.25).   Plaintiff's objects to the R&R claiming that, in fact, defendant was substituted and/or replaced with an

employee much younger than her once she was terminated from employment. (*See,* Docket No. 1, P.10).   Furthermore, plaintiff alleges that she was discharged in retaliation, mainly due to her opposition to Walgreens' unlawful employment actions and because of her age.   Moreover, plaintiff avers that Walgreens' officers constantly addressed her with discriminatory and derogatory comments based on her age.   Finally, Muñoz affirms that defendants took away from plaintiff the most important functions and duties, and assigning them to younger employees. (*See*, Docket No. 12, P. 14).

An examination on the merits renders that the pending controversy is a "mixed motive" case. A "mixed motive" case is one where a decision regarding an employee was the product of legitimate and illegimate motives. Equal Employment Opportunity v. Horizons Hotel Corporation, 831 F. Supp. 10, 15-16 (D. Puerto Rico 1993).   It is the type of case that presents enough evidence to permit a finding that there was a differential treatment in an employment action and that the alleged adverse employment decision was caused at least in part by a forbidden type of bias.   Hillstrom v. Best Western TLC Hotel, 354 F. 3d 27, (1st Cir. 2003). Under a summary judgment standard of review, and scrutinizing the evidence in the light most agreeable to the plaintiff, and providing the benefit of all reasonable inferences, the parties allegations show that legitimate and illegitimate motives for termination are alleged by the parties.

On one hand, plaintiff avers that the reason for employment termination was because of her age.   On the other hand, defendants assert that they decided to terminate plaintiff's employment because of plaintiff's inability to return to work and their need to properly continue with the operation of the business. (*See,* Docket No. 10-2, P. 16).   The Court at this time is reluctant to dismiss plaintiff's ADEA claim.   The Court deems that there are genuine issues of material fact relating to defendants' reasons to terminate plaintiff.   Further, since this is a "mixed motive" case, the Court is precluded from ascertaining what motives and intent were the cause for plaintiff's

termination hence, the Court is precluded from dismissing plaintiff's ADEA claim.  These issues are better suited for the jury.  Mulero-Rodriguez v. Ponte, Inc., 98 F.3d at 677.  Accordingly, the *Report and Recommendation* is **REJECTED**; defendant's motion for summary judgment on the basis that plaintiff has no colorable cause of action under the Age Discrimination in Employment Act is **DENIED**.

### D. ADA CLAIM

Defendants moved for summary judgment sustaining that plaintiff is not a qualified individual as defined by the Americans with Disabilities Act.  The *Report and Recommendation* sustains that "the evidence on record does not support a finding that Muñoz is a qualified individual under the ADA." (*See*, Docket No. 26 P. 20).

In general, A.D.A. is the federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); Jacques v. Clean up Group, 96 F.3d 506, 510 (1st Cir., 1996); Katz v. City Metal Co. Inc , 87 F.3d 26, 30 (1st Cir., 1996); Grenier v. Cyamid Plastics Inc., 70 F.3d 667, 671 (1st Cir. 1995).  In the employment context, the A.D.A. prohibits discrimination against a qualified individual with a disability, because of the disability of such individual, in regard to job application procedures,  hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  Katz v. City Metal Co. Inc, 87 F.3d at 30; Grenier v. Cyanamid Plastics, Inc., 70 F.3d at 671; 42 U.S.C. § 12112(a). In an effort to eliminate discriminatory conduct against individuals with disabilities, the statute prohibits employers from discriminating against "a qualified individual with a disability because of the disability." Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 14 (1st Cir. 1997).

To establish a claim of disability discrimination under the A.D.A., a plaintiff must first demonstrate, that  she is disabled within the meaning of the Act. That is, she has to establish either:

(1) a physical or mental impairment that substantially limits one or more of her major life activities;

(2) a record of such impairment; (3) or that she is being regarded as having such an impairment. See,

Bailey v. Georgia-Pacific Corporation, 306 F.3d 1162, 1166 (1ˢᵗ Cir. 2002); Carroll v. Xerox, 294

F.3d 231, 237 (1ˢᵗ Cir. 2002); 42 U.S.C. § 12102(2).

A three-prong analysis is performed when considering, whether the plaintiff has a physical

or mental impairment that substantially limits one or more of her major life activities. The Court

must first consider whether plaintiff's condition constitutes a mental or physical impairment. Then,

the Court shall identify the life activity upon which plaintiff relies, and must determine whether the

condition constitutes a major life activity under the ADA. Finally, the Court must ask whether the

impairment substantially limits any employee's major life activity.   Toyota Motor Mfg. Inc. v.

Williams, 534 U.S. 184 (2002); Bragdon v. Abbott, 524 U.S. 631 (1998); Carroll v Xerox Corp., 294

F.3d at 238; Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-240 (1ˢᵗ Cir. 2001). "Major life

activities are only those that are of central importance to daily life." Toyota Motor Mfg. v. Williams,

534 U.S. at 197-198.  Hence, "an individual must have an impairment that prevents or severely

restricts the individual from doing activities that are of central importance to most people's daily

lives." Id., at 198.

Whether a person has a disability under the ADA is an individualized inquiry, Sutton v.

United Air Lines, 527 U.S. 471, 483(1999),[1]  plaintiff has the burden of establishing each of the

above referred elements (one of the elements being a limitation to a major life activity). Bailey v.

Georgia-Pacific Corporation, 306 F.3d at 1167.  The determination of whether an individual has a

disability is based on the effect of that impairment on the life of the individual, taking into

---

[1] Considering that ADA defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), "makes clear that Congress intended the existence of a disability to be determined in a case-by-case manner". Toyota Mfg. Inc v. Williams, 534 U.S. at 198; Sutton v. United Air Lines, 527 U.S. at 483; Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).

consideration that some impairments may be disabling for particular individuals but not for others. Katz v. City Metal Co. Inc, 87 F.3d at 32(*quoting* Chandler v, City of Dallas, 2 F.3d 1385, 1396 (5th Cir. 1995)(recognizing that "the effect of a given type of impairment...can vary widely from individual to individual")); 29 C.F.R. § 1630, App. at 402.

Notwithstanding, to establish a *prima facie* case under ADA and obtain relief, a plaintiff must show (1) that she has a qualified disability, (2) that, with or without reasonable accommodations, plaintiff can perform the essential functions of the position she holds ("qualified individual"), (3) that she was discriminated against because of her disability, (4) that she was replaced by a non-disabled person or was treated less favorably than non-disabled employees, and (5) damages were suffered as a result of the adverse employment action.  Terrel v. US AIR, 132 F.3d 621, 624 (11th Cir. 1998);  Jacques v. Clean-Up Group, 96 F.3d at 511;  Katz v. City Metal Co., Inc., 87 F.3d at 30.

In the case at bar, plaintiff alleges to be a qualified individual pursuant to ADA because she allegedly suffers from severe depression diagnosed on March 8, 2002.  Since then, plaintiff alleges that her health condition has deteriorated dramatically.  The evidence on the record reveals that due to plaintiff's severe depression she was hospitalized at First Hospital Panamericano from March 5, 2003 to March 14, 2003.  Shortly after, in the month of April 2003, she returned to work, until April 21, 2003, her last day at work.  Plaintiff, in support of her position, has submitted evidence showing her inability to engage in productive work.  (*See*, Docket No. 26).  Furthermore, Muñoz states that her medical condition precludes her from driving, sleeping, eating, engaging in sexual intercourse and taking care of her children and husband.  (Docket No. 28-1).  All of these activities have been recognized as major life activities pursuant to the ADA.  (*See*, Gelabert-Ladenheim v. American Airlines, Inc, 252 F. 3d  54, 58 (1st Cir. 2001); 29 C.F.R. §1630.2).  In summary, plaintiff sustains that she suffers a mental impairment that substantially limits  several of her major life activities. The Court deems, after a thorough examination of the evidence submitted by plaintiff, that the record is

devoid of any indication that proves that, *in fact*, plaintiff's mental impairment substantially limits several of her major life activities.  Substantially limits is defined as,

> (i) unable to perform a major life activity that the average person in the general population can perform; or
> (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R.§1630.2 (j).

In the present case, plaintiff alleges that she meets the criteria of a qualified individual pursuant to ADA.  In *Plaintiff's Objection to the Report and Recommendation* (Docket No. 28-1), plaintiff indicates that she has "established the fact that her severe depression substantially limited her in the performance of several of her daily life activities, [submitting] the medical record of Dr. Pagán Agostini, and the medical record from First Hospital Panamericano." (*See*, Docket No. 28-1). Further, plaintiff points out in her Sworn Statement wherein she specifies the daily life activities that she is precluded to perform due to her severe depression.  *See*, (Docket No. 28-1).  Nonetheless, after evidence submitted by plaintiff, the Court does not find any fact sustaining *how* plaintiff's mental impairment precluded her from performing, as the average person would, major life activities.  In fact, the record does show contradictory evidence.

The *Complaint* (Docket No. 1), avers that plaintiff's medical condition has negatively affected her performance at work hence, reason to request reasonable accommodation.[2]  In spite of the two different dates averred by plaintiff wherein reasonable accommodation was requested, plaintiff affirms that she was able to perform the job without any reasonable accommodation.

_____

[2]The Court notes that plaintiff offers two different dates for requesting reasonable accommodation.  In the *complaint* (Docket No. 1), plaintiff alludes that her request for reasonable accommodation was made when she returned to work after being hospitalized; while in the *Statement of Contested and Uncontested Facts in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (Docket No. 12-1), plaintiff states that she requested reasonable accommodation around five or seven days before being hospitalized.  *See*, (Docket No. 12-1 ¶¶ 80-81)

Specifically, plaintiff admits that "it must be accepted as an uncontested fact that [plaintiff] Muñoz, notwithstanding her severe depression, **performed the functions and duties of her position, in an excellent manner, and without any accommodation whatsoever, up until April 21st , 2003."** (*See*, Docket No. 12-1, P. 19)(emphasis added).  The Court notes that April 21, 2003, was plaintiff's last day at work.  In other words, plaintiff has admitted that she performed the functions and duties of her position until her last day at work without the need of any accommodation.  The Court is reluctant to even consider the idea that plaintiff's medical condition substantially limited her performance at  work. Consequently, plaintiff has not met her burden showing that she should be regarded as a qualified individual within the meaning of ADA.  Further, plaintiff has also failed to show how her medical condition has substantially limited her performance in major life activities. Accordingly, the Report and Recommendation is **ACCEPTED**.  Accordingly, defendant's motion for summary judgment moving the Court to determine that plaintiff failed to meet ADA's definition of "qualified individual with a disability" is **GRANTED**.

## E. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants sustain that plaintiff failed to exhaust administrative remedies of alleged discriminatory acts occurring prior to December 27, 2002, consequently any allegation relating to conduct prior to this date is time barred.  It is defendant's position that, since  plaintiff filed charges before the Anti-Discrimination Unit of Puerto Rico Department of Labor on September 12, 2003, and then filed charges before the EEOC on October 22, 2003, plaintiff can only bring forth alleged discriminatory acts that occurred within the 300 days statutory term provided by Title VII, (i.e. discriminatory acts that transpired after December 27, 2002).  Therefore, defendants conclude that all alleged discriminatory acts prior to December 27, 2002 are time barred and should be excluded from the complaint.  Plaintiffs' counter by alleging that the alleged discriminatory conduct that occurred prior to December 27, 2002 is not time barred because defendants' conduct created a hostile

work environment constituting a continuing violation hence, the discriminatory conduct spilled over into the limitations period pursuant to the doctrine set forth in <u>National Railroad Passenger Corp. v. Morgan</u>. In <u>Morgan</u> the Supreme Court ruled that a **Title VII plaintiff raising claims of discrete discriminatory and retaliation acts must file his complaint within the appropriate 180-300 day period, <u>but a complaint alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the *same* unlawful practice and at least one act falls within the filling period</u>**. <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 118 (2002)*(emphasis added)*.

The Magistrate Judge concluded that all alleged discriminatory acts performed by defendants that occurring prior to December 27, 2002, are not time barred because of "all of the foregoing acts lead to the conclusion that there was a **continuing violation** as these acts appear to extend over a period of time." (Docket No. 26 P. 13) (emphasis added). According to the Court of Appeals for the First Circuit continuing violation acts are:

> [s]ome acts [that] are imbricated, i.e. they involve an interlinked succession of related events or a fully-integrated course of conduct. Although the limitations clock generally starts with the commission of a discriminatory act, a true 'continuing violation' rewinds the clock for each discriminatory episode along the way. Thus if the later violations in the series are within the prescriptive period, an employee may them despite the fact that earlier acts, forming part and parcel of the same, have grown stale.

<u>Mack v. Great Atlantic and Pacific Tea Company, Inc</u>., 871 F. 2d 179, 183 (1st Cir 1989).

The Court agrees with the conclusion reached by the Magistrate Judge. The present complaint does raise the issue of hostile work environment. Moreover, all the alleged acts constituting the instant claim are part of the same discriminatory conduct against plaintiff. (*See*, <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. at 118. All discriminatory acts seem to be related events of a possible true continuing violation. The allegations submitted by plaintiff in the Complaint and in her Sworn Statement supports a finding of discriminatory conduct in the form of

hostile work environment (i.e., derogatory comments, reduction in the work load, exclusion of meetings and seminars, and unfair evaluations).  Examining the record in the light most flattering to plaintiff, and indulging all reasonable inferences on its behalf, as a trial court must do at summary judgment level, the Court, at this point of the proceedings, is precluded from granting defendants' motion for summary judgment.  Therefore, the *Report and Recommendation* is **ACCEPTED**, and defendants' motion for summary judgment as to plaintiff's failure to exhaust administrative remedies for discriminatory acts occurring before December 27, 2002, is **DENIED**.

## F. SUPPLEMENTAL JURISDICTION CLAIMS

Defendants sustain that since all plaintiffs' federal claims should be dismissed, the Court shall decline to exercise supplemental jurisdiction and dismiss plaintiff's claim under local law.  The *Report and Recommendation*,  indicates that "because there remains pending a  federal claim...at this time it is premature to consider dismissal of the state claims." (Docket No. 26 P. 26).  The Court agrees with the conclusion reached by the Magistrate Judge.  In the instant case, there are colorable federal causes of action.  Hence, the Court retains jurisdiction concerning all plaintiffs' supplemental jurisdiction state law claims, to wit, Law No. 80; Law No. 100; Article 1802 of the Puerto Rico Civil Code; and Law 115[3].

It is known that "[a]s a general principle, the unfavorable disposition of a Plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F. 3d 1168, 1177 (1st Cir. 1995).  Since the Court retains jurisdiction upon several of plaintiff's federal claims, the Court also retains jurisdiction over all other supplemental claims under Puerto Rico Law.  Accordingly, the Report and Recommendation is **ACCEPTED**, and defendant's motion

_____

[3]Given that defendants failed to address in its motion for summary judgment the cause of action pursuant to Law 115, said cause of action remains as a colorable claim.

for summary judgment to dismiss plaintiff's supplemental claims is **DENIED**.

**E. LAW No. 80**

Defendants moved for summary judgment alleging that plaintiff failed to establish a claim under Puerto Rico Law No. 80.  Defendants aver that plaintiff Muñoz was ceased from her position for legitimate reasons, to wit, the proper and normal operation of their business. (*See*, Docket No. 10-2, P. 18). Further, defendants allege that plaintiff was and still is disabled to return to work thus, plaintiff fails to have a colorable cause of action under local Law No. 80.  The R&R notes that in compliance with Puerto Rico's law, Walgreens kept plaintiff's employment available for her return to work for the mandatory period of one year.  Given that plaintiff was unable to return to work because her alleged disability and Walgreens had the need to continue with its business operations, defendants decided to terminate her after the mandatory term of one year had elapsed.

The Magistrate Judge concluded that plaintiff Muñoz was terminated from employment for just cause.  (*See*, Docket No. 26, P. 26).  Plaintiff objected the R&R alleging that defendants' averments regarding her termination are frivolous because defendants' intentional actions in addition to the hostile work environment created towards Muñoz constructively discharged plaintiff.  (*See*, Docket No 28-1, P. 25).  Furthermore, plaintiff reaffirms that her termination was the result, amongst other factors, because of her age, and plaintiff's opposition to defendants' unlawful employment practices.  (*See*, (Docket No. 28-1, P. 25).  Consequently, plaintiff affirms that she is entitled to relief under Law 80.

The Puerto Rico Severance Law, also known as Law No. 80, compels the employer to make a one-time payment based on years of service for employees terminated without "just cause".  P.R. Laws Ann. Tit. 29 § 185 (b) (e) (g).  Just cause is defined by statute as follows:

1.   That the worker indulges in a pattern of improper or disorderly conduct.
2.   The attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the

product produced or handled by the establishment.

3.    The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunity furnished to the employee.

4.    Full, temporary or partial closing of the operations of the establishment.

5.    Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

6.    Reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge.

P. R. Laws Ann. Tit. 29 §185 (b).

Further, the law provides that no payment should be disburse should the employee be dismissed with "just cause".  P.R. Laws Ann. Tit. 29 §185 (a).  Moreover, the law requires the employer to retain older employees in cases of "full, temporary or partial closings," "reorganizations" and "reductions in the employment...necessary by a reduction in the volume of production, sales, profits, anticipated or prevalent", except that the employee ability and/ or capacity may override seniority in cases of "clear and conclusive deficiency in favor of the efficiency or capacity of the workers compared."  P.R. Laws Ann. Tit. 29 §185 (b) (e) (f).

In the instant case, the Court is precluded from granting a motion of summary judgment on the basis of Law 80.  The are genuine issues of facts concerning the real motive behind plaintiff's discharge that preclude the Court from determining if in fact defendants had  just cause to terminate plaintiff's employment.  Considering that this Court has determined the present complaint as a mixed motive case[4], plaintiff's cause of action pursuant to Law 80 survives defendants' motion for summary judgment.  Consequently, the Report and Recommendation is **REJECTED**; hence defendant's motion for summary judgment on account of plaintiff's failure to establish a cause of action under Law 80 is **DENIED.**

---

[4] *See*,  the Legal Analysis, section (C) ADEA claim.

**Page 25 of  29**

**F. LAW No. 100**

Defendants move the Court to grant motion for summary judgment pursuant to Law No. 100, sustaining that no discriminatory act was performed against Muñoz on the basis of age. Defendants aver that all decisions relating to plaintiff's termination were not made by any discriminatory reasons or animus, but rather on the basis of sound non discriminatory business management reasons. (*See*, Docket No. 10-2). The R&R determines that defendants met their burden, presenting evidence showing that the decision to terminate plaintiff from the employment was not related to plaintiff's age. Furthermore, the Magistrate Judge recommended that summary judgment be granted on the Law No. 100 claim but left pending resolution plaintiff's hostile work environment claim brought under the same statute. (*See*, Docket No. 26, P. 28). Plaintiff objected to the *Report and Recommendation* alleging that age was a motivating factor in plaintiff's abusive and intolerable working conditions and subsequent termination. (*See*, Docket no. 28-1, P. 23-24). Therefore, plaintiff avers to have a colorable cause of action under Law 100.

For purposes of considering all local claims under Law 100, P.R. Laws Ann. tit. 29 §146 et seq., the court is guided by the Puerto Rico Supreme Court cases of  Narvaez v. Chase Manhattan Bank, 120 P.R. Dec. 731, 1998 WL 580838 (1988); Baez Garcia v. Cooper Lab., 120 P.R. Dec. 145; 1987 WL 448243 (1987);  Ibañez v. Molinos de Puerto Rico, Inc, 114 P.R. Dec. 42, 1983 WL 204221 (1983), and the adoption of said cases by federal courts, De Arteaga v. Pall Ultrafine Filtration Corp., 862 F. 2d 940, 943 (1st Cir. 1988); Menzel v. Western Auto Supply Co., 848 F. 2d 327, 330-331 (1st Cir. 1988); and Dominguez v. Eli Lilly and Co., 958 F. Supp. 721, 741 (D.P.R. 1997), discussing the burden shifting standard under Law 100. Generally, "[t]he employee carries the initial burden of presenting sufficient, probative evidence that she or he was discharged without 'just cause'. This burden encompasses two requirements. The employee must show that: (1) he or she was actually or constructively discharged; and (2) the discharge was without just cause."

Page 26 of  29

<u>Dominguez v. Eli Lilly</u>, 958 F. Supp. at 741 (citations omitted).  Should the employee prove no "just cause", a presumption of discrimination is established.  The presumption is controvertible.  P.R. Laws Ann. Tit. 29 §148.  The employer must then produce evidence and persuade the court that the employer was dismissed for a non-discriminatory reason.  <u>Ibañez</u>, 1147 P.R. Dec. at 51-53.

In the case at bar, the Court finds that plaintiff has established a prima facie case pursuant to Law No.100.  Plaintiff has pointed out a series of events that may account for constructive discharge.  Plaintiff claims that defendants harassed and discriminated against her for years, having the effect of forcing her to leave the employment.  (*See*, Docket No. 28 P. 24).  Moreover, plaintiff has presented enough evidence to refrain this Court from granting a summary judgment in favor of the defendants.  There are genuine issues of facts that cast doubt as to the allegation that defendants consider the age factor when dealing and working with plaintiff.  Consequently, the *Report and Recommendation* is **MODIFIED**, hence defendants' motion for summary judgment for plaintiff's failure to establish a cause of action under Law No. 100 is **DENIED**.

**G. Article 1802**

Defendants seek brevis disposition of co-plaintiff Cesar Perez's failure to establish a cause of action pursuant to Article 1802 of the Puerto Rico Civil Code.  Defendants argue plaintiff's separation from employment was prompted by legitimate reasons, to wit,  Muñoz's inability to return to work, and Walgreens' need to continue with the normal day to day business operation.  The *Report and Recommendation* denied defendant's motion for summary judgment not deciding to rule upon the Article 1802 claim because it had previously determined that Muñoz's claim under Law No. 100 for hostile work environment was a colorable claim.

Under Puerto Rico's tort statute, Article 1802 of the Puerto Rico Civil Code, a person who causes damage to another through fault or negligence shall be liable in damages.  Furthermore, Article 1868 (2) of the Puerto Rico Civil Code establishes a one-year limitations period for actions

arising from fault or negligence, "from the moment the aggrieved person has the knowledge of the injury, P.R. Laws Ann. Tit. 31 §5298 (2). A cause of action under article 1802 accrues and the prescriptive period begins to run when the injured party knew or should have known of the injury and the likely of the tortfeasor. See, Colon Prieto v. Geigel, 115 P.R. Dec. 232, 243 , 1984 WL 270950. In order to establish a cause of action under Article 1802, plaintiff has to satisfy the following three prongs: 1) an act or omission constituting fault or negligence, 2) a clear and palpable damage, and 3) a legally sufficient causal relationship between defendant's tortuous conduct and the injuries sustained by plaintiff. See, Bonilla v. Chardon, 118 P.R. Dec 599 (1987).

The Supreme Court of Puerto Rico has recognized a cause of action for the emotional distress suffered by an individual with family and emotional love ties to an injured party. See, Caez v. U.S. Casualty Co., 80 P.R. Dec. 729, 735 (1958). Said cause of action, known as a cause of action by reason of family ties, attempts to compensate the plaintiff's relatives for their individual moral harm. See, Defendini Collazo et al. v. E.L.A. Cotto, 1993 WL 839857.

In the instant case, the complaint brings forth allegations that co-plaintiff-Cesar Perez, Muñoz's husband, has suffered tremendously emotional distress due to the alleged discriminatory actions taken by the defendants against his wife. (See, Docket No. 1, P. 12). The Supreme Court has expressly authorized a third party bring an employer based on a discriminatory charge filed by an employee under Law 100. Santini-Rivera v. Serv Air, Inc., 137 P.R. Dec. 1 (1994)(parents and girlfriend of employee suing for damages under Article 1802 against employer for consequential damages suffered resulting from separation from employment for having being fired having a cause of action under Law 100.) The Court reasons that in view of plaintiffs' pending federal and state law claims, the Court is reluctant to grant  defendants' summary judgment for plaintiff's spouse under Article 1802. As the spouse may have in law consequential damages relating to the termination of

employment of his wife under Law 100.[5]  The Court agrees with the decision reached by the Magistrate Judge.  Thus, the Report and Recommendation is **ACCEPTED**; hence defendants' motion for summary judgment moving to dismiss plaintiff's spouse claims under Article 1802 is **DENIED**.

## CONCLUSION

For the reasons stated herein the Court hereby **ACCEPTS in part** the Magistrate Judge's R & R hence defendants' request for brevis disposition is **DENIED** as to plaintiffs' claims being barred because of the applicability of *res judicata*; **GRANTED** as to dismissal of plaintiffs' ADA claims; **DENIED** as to plaintiffs' failure to exhaust administrative remedies; **DENIED** as to defendants' request to dismiss plaintiffs' supplemental claims.  Likewise, the Magistrate Judge's R&R is **REJECTED in part** hence, defendants' request to dismiss plaintiffs' claims for their failure to amend the EEOC charge is **DENIED**; **GRANTED** as to defendants' request to dismiss plaintiffs' ADA claims; and **DENIED** as to dismissal of plaintiffs' claims pursuant to Law No. 80.  Finally, the Magistrate Judge's R&R is **MODIFIED in part** and defendants' request to dismiss plaintiffs' claims under Law No. 100 is **DENIED**.[6]

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 31st day of March 2006.

S/ DANIEL R. DOMINGUEZ
_____
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

[5] The case of Rivera-Santini, 137 P.R. Dec. 1 (1994), has a strong persuasive dissent which the Court deems should be followed.  However, we must respect Puerto Rico precedent notwithstanding our personal opinion as to local law.

[6]The Court will refrain from issuing a partial judgment at this time.  The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals.  See Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief.  Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule . . . furthers 'the strong congressional policy against piecemeal review.'" Id. (quoting In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)); see also United States v. Nixon, 418 U.S. 683, 690 (1974).